IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAELA PERSICHINI and MATTHEW LAWLOR, *husband and wife*, | |
| *Plaintiffs*, | Civil Action No. 2:21-cv-1775 |
| v. | Hon. William S. Stickman IV |
| NATIONWIDE GENERAL INSURANCE COMPANY, | |
| *Defendant*. | |

### **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

### I.  INTRODUCTION

This dispute arises from a claim made by Plaintiffs Michaela Persichini ("Persichini") and Matthew Lawlor ("Lawlor") under a motor vehicle insurance policy issued to Persichini by Defendant Nationwide General Insurance Company ("Nationwide").[1] (ECF No. 1-1). Plaintiffs filed a Complaint ("Complaint") on November 8, 2021, in the Court of Common Pleas of Mercer County, Pennsylvania alleging breach of contract (Count I), statutory bad faith (Count II), defamation (Count III) and intentional infliction of emotional distress (Count IV) against Nationwide. (*Id.*). Nationwide removed the case to this court on December 6, 2021, and filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF

---

[1] In Plaintiffs' Complaint, they named "Nationwide Property and Casualty Insurance Company" as the Defendant. The parties later stipulated that the correct identity of the party who issued the motor vehicle insurance policy to Persichini was "Nationwide General Insurance Company." (ECF No. 6); (ECF No. 7).

1

No. 1); (ECF No. 3). For the following reasons, the Court will grant in part and deny in part Nationwide's Motion to Dismiss.

## II. FACTUAL BACKGROUND

Persichini had a motor vehicle insurance policy ("Policy") that was issued by Nationwide and was in effect from September 24, 2020, to September 24, 2021.[2] (ECF No. 1-1, ¶ 4). Plaintiffs owned a 2013 Volkswagen Jetta Sedan TDI ("Vehicle"), that was covered by the Policy. (ECF No. 1-1, ¶ 6). At some point in late September 2020, Plaintiffs discovered a problem with the Vehicle and took it to Vanmar Automotive Repair ("Vanmar"). (*Id.* at ¶¶ 9-10). Vanmar allegedly had difficulty diagnosing the problem, but eventually informed Plaintiffs that the repair would cost $500. (*Id.* at ¶¶ 11-13). Plaintiffs dropped off $500 to Vanmar in hopes of getting the repairs completed in late December 2020. (*Id.* at ¶ 14). On or about February 18, 2021, Lawlor contacted Vanmar to check the status of when the parts would be delivered for the Vehicle. (*Id.* at ¶ 15). During this communication, Lawlor became unsettled as to whether Vanmar was doing what they had been telling him. (*Id.* at ¶ 16). On or about February 23, 2021, Lawlor informed Vanmar that he would pick up the transmission and rebuild it. (*Id.* at ¶ 17). Later that day, Lawlor, along with a friend who owned a flatbed tow truck, went to Vanmar to pick up the Vehicle. (*Id.* at ¶ 18). When Lawlor arrived at Vanmar, he discovered that the Vehicle had not been fully put back together and that it had been left outside in the snow with the door and hood open. (*Id.* at ¶ 19).

Plaintiffs hired a mechanic to examine the Vehicle and discovered that numerous parts unrelated to the claimed repairs were missing. (*Id.* at ¶ 20). Plaintiffs allegedly confronted Vanmar and it explained that an employee of theirs had been fired for theft and that Plaintiffs should advise of any missing parts. (*Id.* at ¶ 21). Lawlor then notified the police department of what happened

---

[2] Plaintiffs' Policy Number was: 5837J 358209. (ECF No. 1-1, ¶ 5).

to the Vehicle. (*Id.* at ¶ 22). The police department had an officer speak to Lawlor and offered to follow up. (*Id.* at ¶ 23). A week later, a different police officer from Hempfield Police Department informed Plaintiffs that the police considered this a civil matter. (*Id.* at ¶ 24).

After reporting the incident to the police, Lawlor also reported it to Nationwide.[3] (*Id.* at ¶ 25). Nationwide began an investigation and spoke with Plaintiffs and Vanmar. (*Id.* at ¶ 26). Vanmar denied having possession of the Vehicle and claimed it was never contracted to do any repairs or other work. (*Id.* at ¶¶ 27-28). After Nationwide informed Plaintiffs of Vanmar's response, Plaintiffs allege that they offered to share information that would have proved that Vanmar had been working on the Vehicle. (*Id.* at ¶ 29). Nationwide did not accept Plaintiffs' evidence and then closed the Claim on the basis that it was a mechanical fault and not covered by the Policy. (*Id.* at ¶ 30).

Plaintiffs then made a complaint to the Pennsylvania Insurance Department alleging that such an interpretation of the Policy was contrary to Pennsylvania law. (*Id.* at ¶ 31). On April 14, 2021, the Pennsylvania Insurance Department issued a directive stating that Nationwide "clarified concerns about theft of parts from the vehicle . . . [and] decided to further investigate these allegations." (*Id.* at ¶ 32); (*Id.* at p. 74). Plaintiffs then allege that "through electronic communication Nationwide advised that the [C]laim had been accepted and advised what steps should be taken to have the [Vehicle] turned in as part of accepting the total loss benefit."[4] (*Id.* at ¶ 34).

Contrary to their previous communication with Plaintiffs, on May 7, 2021, Nationwide issued a denial stating that because there were no criminal charges filed by the police or District

---

[3] Plaintiffs were assigned claim No. 532394-GL ("Claim") by Nationwide. (ECF No. 1-1, ¶ 25).

[4] Plaintiffs allege that Nationwide did not inspect the Vehicle. (ECF No. 1-1. ¶ 35).

3

Attorney and that because the Vehicle had been picked up by Lawlor, no coverage was available. (*Id.* at ¶ 36). On June 28, 2021, Persichini received a letter from Nationwide stating that it had forwarded information on the Claim to the Mercer County District Attorney and the National Insurance Crime Bureau alleging fraud by Persichini. (*Id.* at ¶ 37).

### III. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although a court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a

plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

## IV.   ANALYSIS

### A.   Breach of Contract – Count I

At Count I, Plaintiffs bring a breach of contract claim against Nationwide alleging that it breached the Policy by not reimbursing them for the full value of the Vehicle "at the time of the loss." (ECF No. 1-1, p. 9). Nationwide's only argument for dismissing Plaintiffs' breach of contract claim is that Plaintiffs named the wrong insurer in their Complaint and, therefore, Nationwide is not liable because it is not a party to the Policy. (ECF No. 4, p. 9). This argument is now moot because the parties have stipulated that the correct identity of the party who issued

the motor vehicle insurance policy to Persichini was "Nationwide General Insurance Company." The stipulation now makes Nationwide a party to the Policy. (ECF No. 6); (ECF No. 7).

In order to state a claim for a breach of contract, a plaintiff must demonstrate: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002)). The Court finds that Plaintiffs have sufficiently pled a claim for breach of contract. First, Plaintiffs have alleged that the Policy was a contract that existed between Persichini and Nationwide, and that an essential term of the Policy was that Nationwide was to cover losses to the insured Vehicle. (ECF No. 1-1, ¶¶ 4-5, 39); *Transamerican Office Furniture v. Travelers Prop. & Cas.*, 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002) (stating that ordinary contract law principles apply to the interpretation of insurance policies because "insurance policies are considered contracts"). Second, Plaintiffs allege that Nationwide breached the Policy by not reimbursing them for the full value of the Vehicle at the time of the loss. (*Id.* at ¶¶ 57-58). Third, Plaintiffs sufficiently allege that as a result of the breach they did not receive reimbursement for the full value of the Vehicle, and that they suffered additional damages because they "were without a motor vehicle for an extended period of time which caused other economic hardships including additional repair costs on other vehicles, additional mileage, . . . [and] eventually [had] to purchase a replacement vehicle." (*Id.* at ¶¶ 58-59). Plaintiffs have sufficiently pled enough to survive a motion to dismiss. Nationwide's Motion to Dismiss Count I will be denied.

B.     **Statutory Bad Faith – Count II**

At Count II, Plaintiffs bring a claim for bad faith under Pennsylvania's bad faith statute. In Pennsylvania, a claim of bad faith brought against an insurer is recognized by 42 Pa. C.S. § 8371. To state a claim for bad faith, a plaintiff "must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." 42 Pa. C.S. § 8371; *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Bad faith claims arise when an insured properly notifies the insurer of a claim and the insurer then either fails to investigate, refuses to investigate, conducts a negligent investigation, or fails or refuses to pay all or part of the claim. *See, e.g.*, *Rancosky v. Wash. Nat'l Ins. Co.*, 130 A.3d 79, 96–98 (Pa. Super. 2015) (discussing insurer's failure to conduct reasonable investigation of claim after claimant's notice to insurer); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 689 (Pa. Super. 1994) (denying bad faith claim for injured parties who reported accident to insurer and received low settlement offer prior to arbitration). Nationwide correctly argues that bad faith must be proven by clear and convincing evidence and that a plaintiff must show "that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." (ECF No. 4, p. 11) (quoting *Terletsky*, 649 A.2d at 688). But, at the Rule 12(b)(6) stage, Plaintiffs need not meet this high burden. Rather, they must only allege sufficient facts that, if accepted as true, state a bad faith claim plausible on its face. *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.

In their Complaint, Plaintiffs allege that Nationwide committed bad faith in the following three ways: (1) by failing to properly investigate their Claim; (2) denying their Claim; and (3) reporting Persichini to the Mercer County District Attorney's Office and the National Insurance

7

Crime Bureau for insurance fraud. (ECF No. 1-1, p. 11). Based on the allegations in the Complaint, the Court finds that Plaintiffs have sufficiently pled a claim for bad faith based on their first two theories. Plaintiffs' third theory fails because reporting alleged insurance fraud to proper legal authorities does not support a claim for bad faith. *See* 42 Pa. C.S.A. § 8371; *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017) (bad faith claims arise when an insurer either fails to investigate, refuses to investigate, conducts a negligent investigation, or fails or refuses to pay all or part of the claim).

Plaintiffs' first theory specifically alleges that Nationwide failed to properly investigate their Claim:

> a. In failing to ever do an in-person investigation of the Jetta to determine a complete inventory of the missing parts and assess the damage;
> b. In failing to consider evidence available from the Plaintiffs to establish that Vanmar Automotive had lied in their initial statement to Nationwide;
> c. In failing to take statements from other relevant witnesses who would have been able to stablish that Vanmar Automotive had been lying;
> d. In failing to take into account that Vanmar Automotive changed its position on whether it ever had the vehicle for repairs or not; and
> e. In failing to do an inspection at Vanmar Automotive to look for any of the parts improperly removed from the Plaintiffs' Jetta.

(ECF No. 1-1, ¶ 65). A proper investigation of Plaintiffs' Claim would have involved an inspection of the Vehicle. Additionally, it would have included the acceptance and consideration of evidence proffered by Plaintiffs allegedly showing that Vanmar had worked on the Vehicle. According to Plaintiffs' Complaint, Nationwide failed to take either of these actions during their investigation. The Court must accept these allegations as true, and in doing so it finds that Plaintiffs have sufficiently alleged enough facts to state a claim that Nationwide acted in bad faith by conducting a negligent investigation of their claim.

Plaintiffs' second theory for bad faith is premised upon Nationwide's denial of their Claim. Specifically, Plaintiffs allege that the missing parts from the Vehicle were removed as either an

attempted vandalism or theft. (*Id.* at ¶ 69). Additionally, Plaintiffs allege the Vehicle was vandalized while in possession of Vanmar as a result of it being left outside and exposed to the snow with the door and hood open. (*Id.* at ¶¶ 19, 75). In their Complaint, Plaintiffs contend that Nationwide denied coverage after only assessing the Claim on a theft basis and did not consider the Claim on a vandalism basis despite Plaintiffs' reference to both. (*Id.* at ¶¶ 76-77). Again, the Court again must accept these allegations as true, and in doing so finds that Plaintiffs have sufficiently alleged enough facts to state a claim that Nationwide acted in bad faith by denying the coverage solely on the basis of theft. The Court will not dismiss Plaintiffs' bad faith claim at this early juncture. Nationwide's Motion to Dismiss Count II will be denied.

### C. Defamation – Count III

At Count III, Plaintiffs bring a defamation claim against Nationwide stemming from its allegations of insurance fraud. (ECF No. 1-1, p. 15). In order to successfully establish a claim for defamation under Pennsylvania law, a plaintiff has the burden of proving: (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa. C.S. § 8343(a). In their Complaint, Plaintiffs allege that Nationwide's communications were defamatory because they accused Plaintiffs of committing insurance fraud. (ECF No. 1-1, ¶ 98). Plaintiffs also contend that the communications were published by Nationwide to Mercer County District Attorney's Office and the National Insurance Crime Bureau. Additionally, Plaintiffs allege that the communications apply to them, their content and applicability to Plaintiffs can be understood, and that they suffered harm as a result of the communications. (ECF No. 1-1, p. 15).

In response, Nationwide posits that even if Plaintiffs have sufficiently pled the elements necessary for a defamation claim, the communications were privileged and, therefore, Plaintiffs' claim is barred. In an action for defamation, the defendant has the burden of proving, when the issue is properly raised: (1) the truth of the defamatory communication; (2) ***the privileged character of the occasion on which it was published***; and (3) the character of the subject matter of defamatory comment is of public concern. *Miketic v. Baron*, 675 A.2d 324, 327 (Pa Super. 1996) (citing 42 Pa. C.S. § 8343(a), (b)) (emphasis added). The Superior Court of Pennsylvania has held that:

> Liability for publication of defamatory matter may be defeated by a privilege to publish the defamation. One who publishes defamatory matter within the scope of an absolute privilege is immune from liability regardless of occasion or motive. However, such a privilege may be lost if the publisher exceeds the scope of his privilege by publishing the defamation to unauthorized parties.

*Davis v. Resources for Human Development, Inc.*, 770 A.2d 353, 358 (Pa. Super. 2001) (quotation and quotation marks omitted). "Whether a particular statement is absolutely privileged is a question of law for the court." *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. 1991) (citation omitted). The Supreme Court of Pennsylvania has recognized:

> Pennsylvania law closely guards the ability of a person whose reputation has been injured by defamatory statements to obtain redress for such injury . . . . At the same time, there is a fundamental societal need for justice to be administered freely and efficiently through the eliciting of speech from parties and witnesses that may be accusatory or otherwise reflect negatively upon another's character. Thus, notwithstanding any reputational harm that may ensue, Pennsylvania, like many other jurisdictions, recognizes a judicial privilege providing immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought. The privilege covers statements by a party, a witness, an attorney, or a judge. Furthermore, the privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice.
> The judicial privilege serves an essential function in guaranteeing access to the courts and permitting the free articulation and resolution of legal claims. Hence, its purpose is to allow participants in judicial proceedings to speak freely without fear of civil liability.

*Schanne v. Addis*, 121 A.3d 942, 946-47 (Pa. 2015) (citations and footnotes omitted).

Nationwide contends that their communications are privileged under the judicial privilege and cites to *Pawlowski v. Smorto*, 588 A.2d 36 (Pa. Super. 1991). In *Pawlowski*, the Superior Court of Pennsylvania extended the judicial privilege to statements made to the police, as well as to the district attorney. The Superior Court held that "the scope of the absolute judicial privilege . . . applies to private parties involved in providing information to the proper authorities in connection with the suspected commission of a crime." *Id.* at 42. It reasoned that:

> As stated above, according absolute privilege to statements made in or preliminary to judicial proceedings aim at ensuring free and uninhibited access to the judicial system. This policy is obviously served by application of the privilege to statements made solely to law enforcement officials for the purpose of initiating criminal charges. Although such statements may ultimately prove to be false or maliciously motivated, the same may be said of statements made by a party who consults with his or her attorney preliminary to instituting a civil action, or of statements made by counsel in preliminary conferences or negotiations on their client's behalf. Nevertheless, such statements are deemed to be absolutely privileged because the policy concerns stated above outweigh the right of the defamation plaintiff to seek redress for harm caused by the statements.

*Id.* at 42 (citation omitted). The Superior Court accorded absolute privilege to communications—which amounted to an accusation of a crime—made to law enforcement officials. *Id.; See also Marino v. Fava*, 915 A.2d 121, 124 (Pa. Super. 2006) (holding that statements made by the defendant to the police and mental health officials regarding the initiating of involuntary commitment proceedings against the plaintiff were absolutely privileged.)

The communications at issue here are likewise privileged. Nationwide reported the suspected insurance fraud to the Mercer County District Attorney's Office and the National Insurance Crime Bureau. These two entities were the proper authorities to whom Nationwide needed to report the suspected insurance fraud. Plaintiffs fail to allege that Nationwide exceeded the scope of its privilege by publishing the defamation to unauthorized parties. Pennsylvania's

policy concerns outweigh Plaintiffs' right to bring their claim for defamation. *See Pawlowski*, 588 A.2d at 42. Nationwide's Motion to Dismiss Count III will be granted.

### D.     Intentional Infliction of Emotional Distress – Count IV

Persichini alone brings a claim for intentional infliction of emotional distress ("IIED") alleging that she was threatened with allegations of insurance fraud when Nationwide "knowingly made false allegations of insurance fraud which it communicated to multiple parties, including the Mercer County District Attorney's Office."[5] (ECF No. 1-1, p. 16). To state a claim for IIED, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997). Extreme and outrageous conduct has been described as being "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." *Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998). It is the "duty of the court to determine, in the first instance, whether the defendants' conduct could reasonably be regarded as so extreme and outrageous as to permit recovery." *Wells v. Thomas,* 569 F.Supp. 426, 433 (E.D. Pa. 1983) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–74 (3d Cir. 1979)).

Nationwide argues that Persichini's claim for IIED cannot prevail because she has not alleged behavior that is extreme and outrageous. It also contends that it had a "statutory obligation to report potential fraud to Federal, State or local criminal law enforcement authorities [and] [b]ased on the information that Nationwide collected in its investigation, there was a potential that Plaintiffs' claim was fraudulent." (ECF No. 4, p. 17). The Court agrees and finds that Plaintiffs

---

[5] The parties agreed and stipulated that a claim for IIED was not filed on behalf of Lawlor. (ECF No. 6); (ECF No. 7).

have not sufficiently alleged extreme and outrageous conduct by Nationwide. Plaintiffs' Complaint alleges that after a negligent investigation regarding their Claim, Nationwide denied coverage and then "knowingly made false allegations" of insurance fraud to the district attorney's office and the National Insurance Crime Bureau. (ECF No. 1-1, p. 16). The problem with Plaintiffs' claim is that they fail to allege sufficient facts that Nationwide "knowingly made false allegations" and instead they assert this conclusory statement without merit. (*Id.*). An allegation of this nature, that tenders "naked assertions devoid of further factual enhancement," does not have sufficient facial plausibility that would allow the Court to draw a reasonable inference that Nationwide knowingly made false allegations. Therefore, the Court cannot draw a reasonable inference that Nationwide is liable for IIED on this allegation alone. *See Iqbal*, 556 U.S. at 678. Nationwide's alleged behavior may be negligent, but it does not amount to conduct that is "beyond all possible bounds of decency," "atrocious," or "utterly intolerable in a civilized community." Nationwide's Motion to Dismiss Count IV will be granted.

## V. CONCLUSION

For these reasons, Nationwide's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted in part and denied in part. An order of Court will follow.

BY THE COURT:

 s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

July 18, 2022
Dated

13