IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAELA PERSICHINI and MATTHEW LAWLOR, *husband and wife*, <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONWIDE GENERAL INSURANCE COMPANY, <br><br> *Defendant*. | Civil Action No. 2:21-cv-1775 <br><br> Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

### I.  INTRODUCTION

Plaintiffs, Michaela Persichini ("Persichini") and Matthew Lawlor ("Lawlor"), husband and wife (collectively, "Plaintiffs"), filed this action against Defendant, Nationwide General Insurance Company ("Nationwide"), raising breach of contract (Count I) and statutory bad faith (Count II) claims. (ECF No. 1-1). Plaintiffs allege Nationwide breached the parties' automobile insurance policy (the "Policy") by wrongfully denying their insurance claim and, in doing so, violating Pennsylvania's insurance bad-faith statute after failing to conduct an adequate investigation. (*Id.*). Nationwide filed a Motion for Summary Judgment ("Motion") (ECF No. 36), requesting that the Court grant summary judgment in their favor. For the reasons that follow, the Court denies Nationwide's Motion.

### II.  FACTUAL BACKGROUND

In September 2020, Plaintiffs discovered a problem with their 2013 Volkswagen Jetta ("Vehicle"). (ECF No. 38, ¶¶ 6-7); (ECF No. 40, ¶¶ 6-7). Concerned that the Vehicle had an

1

unknown leak, Plaintiffs took the Vehicle to VanMar Automotive Repair ("VanMar") for inspection. (ECF No. 38, ¶¶ 7-10); (ECF No. 40, ¶¶ 7-10). According to Lawlor, the owner of VanMar, Shawn Eckhardt ("Eckhardt"), initially inspected the Vehicle with dye and a fiberoptic camera and diagnosed that a raddled seal in the transmission caused the unknown leak. (ECF No. 38, ¶ 11); (ECF No. 40, ¶ 11). Two weeks after the initial inspection, Lawlor claims that Eckhardt called him and told him that he also found a hole in the Vehicle's transmission casing. (ECF No. 38, ¶ 12); (ECF No. 40, ¶ 12).

While Lawlor and Eckhardt were working together to repair transmission casing, Lawlor became frustrated with VanMar's progress and, ultimately, lost confidence in its ability to repair the unknown leak. (ECF No. 38, ¶¶ 17-19); (ECF No. 40, ¶¶ 17-19). At that point, the Vehicle had been at VanMar for approximately three months. (ECF No. 44-3, p. 5). Consequently, Lawlor and his friend, Brian Clark ("Clark"), made an unexpected visit to VanMar with a trailer to pick up the Vehicle. (ECF No. 38, ¶ 20). Upon their arrival at VanMar, Lawlor found the Vehicle outside with parts missing from the engine bay. (ECF No. 38, ¶¶ 22-23); (ECF No. 40, ¶¶ 22-23). Lawlor, Clark, and Eckhardt proceeded to search VanMar's facility to ensure no other parts were left inside VanMar's facility. (ECF 38-2, p. 36). Afterward, Eckhardt told Lawlor that he did not have any other parts than the ones located with the Vehicle. (*Id.*).

While loading the Vehicle onto the trailer, Lawlor and Clark contend Eckhardt mentioned that he had to fire a mechanic (the "Helper") for stealing parts. (ECF No. 38, ¶ 26); (ECF No. 40, ¶ 26). Eckhardt states he fired his Helper but not for stealing. (ECF No. 38-4, pp. 17-18). After retrieving the Vehicle, Plaintiffs hired a mechanic to examine it, and he allegedly determined that numerous parts unrelated to VanMar's repairs were missing. (ECF No. 38, ¶ 32); (ECF No. 40, ¶ 32). Lawlor also reported what he believed to be theft or vandalism to the police, who told him it

2

was a civil matter. (ECF No. 38-2, p. 30). Subsequently, Plaintiffs submitted a claim to Nationwide under the Policy for alleged theft or vandalism of their Vehicle's parts. (ECF No. 38, ¶ 39); (ECF No. 40, ¶ 39).

In response to Plaintiffs' claim, Nationwide opened an investigation. (ECF No. 38, ¶ 40). Nationwide took recorded statements from Persichini and Eckhardt. (ECF No. 38, ¶ 40); (ECF No. 40, ¶ 40). It also conducted an unrecorded phone call with the police officer who talked to Lawlor and Eckhardt regarding Plaintiffs' theft complaints. (ECF No. 38, ¶ 40); (ECF No. 38-7, p. 2); (ECF No. 40, ¶ 40). Nationwide did not retain anyone to inspect the Vehicle. (ECF No. 44, ¶ 2). Once Nationwide completed its investigation, it denied Plaintiffs' claim, conveying that it did not find evidence that theft or vandalism occurred. (ECF No. 38, ¶¶ 39, 42); (ECF No. 40, ¶¶ 39, 42).

### III.    STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

IV.  ANALYSIS

As a threshold matter, Nationwide attempts to challenge Lawlor's legal standing by claiming that he is not covered by the Policy because he is not an owner of the Vehicle. (ECF 37, p. 14-15). Nationwide misinterprets the plain language of the Policy—the very document it drafted. Both parties agree that Part D of the Policy provides Nationwide "will pay for direct and accidental loss to 'your covered auto.'" (ECF No. 38, ¶ 38); (ECF No. 40, ¶ 38). According to the Policy, "[y]our covered auto" means, in part, "[a]ny vehicle shown in the Declarations." (ECF No. 1-1, p. 26). "Your," in turn, includes "[t]he 'named insured' shown in the Declarations" and "[t]he spouse if a resident of the same household." *Id.* at 25. Per the Policy's Declarations, Persichini is the named insured. *Id.* at 19. Lawlor is Persichini's spouse, which Nationwide does not dispute. Because Lawlor is the spouse of the Policy's named insured, both Plaintiffs are covered for loss related to the Vehicle. The Policy states Nationwide "will pay for loss to 'your covered auto' caused by" a "collision" or "other than collision." *Id.* at 35-36. Accordingly, both Plaintiffs, as covered individuals, can file a claim under the Policy for said loss, which the parties agree that Plaintiffs did here. "*Plaintiffs* submitted a claim for property damaged under the Policy. Specifically, *they* claimed the [Vehicle] sustained damages caused by theft or vandalism while at VanMar." (ECF No. 38, ¶ 39); (ECF No. 40, ¶ 39) (emphases added). The Court now turns to the merits of Count I and Count II.

A.  **Breach of Contract – Count I**

Nationwide has moved for summary judgment on Plaintiffs' breach of contract claim, Count I. An insurance policy, like the Policy, is a type of contract governing terms of coverage of losses. To successfully maintain a cause of action for breach of contract under Pennsylvania law, "the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a

breach of a duty imposed by the contract, and (3) resultant damages." *McShea v. City of Philadelphia*, A.2d 334, 340 (Pa. 2010).

Pennsylvania requires its courts to examine the applicable provisions of the insurance policy to ascertain the intent of the parties and determine coverage. *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019) (citing *401 Fourth St., Inc. v. Inv'rs Ins.*, 879 A.2d 166, 171 (Pa. 1999)). "[W]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language." *Gallagher*, 201 A.3d at 137 (citing *401 Fourth St., Inc.*, 879 A.2d at 171) (internal quotation marks omitted). When the language is ambiguous, however, courts must construe it "in favor of the insured and against the insurer, the drafter of the agreement." *Prudential Prop. & Cas. Ins. v. Sartno*, 903 A.2d 1170, 1177 (Pa. 2006) (citation omitted). Words or provisions are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (citing *Madison Constr. Co. v. Harleysville Mut. Ins.*, 735 A.2d 100, 106 (Pa. 1999)). "A word is not ambiguous, however, simply because it is undefined." *Greenwood Racing Inc. v. Am. Guar. & Liab. Ins.*, No. 21-1682, 2022 WL 4133295, at *3 (E.D. Pa. Sept. 12, 2022) (citing *Gemini Ins. v. Meyer Jabara Hotels LLC*, 231 A.3d 839, 849 (Pa. Super. 2020)).

Neither party disputes the validity of the Policy or that Pennsylvania law controls the Court's analysis. (ECF No. 38, ¶ 37). Thus, the issue in this case turns on whether Nationwide breached the terms of the Policy when it denied Plaintiffs' claim for alleged loss due to theft or vandalism of the Vehicle's parts. Ultimately, the Court denies Nationwide's Motion as to Count I.

### 1. Controlling Definitions for the Policy

The Policy issued by Nationwide covers loss in two circumstances: (1) "[o]ther than collision" and (2) "[c]ollision." (ECF No. 38, ¶ 38); (ECF No. 40, ¶ 38) (internal quotation marks omitted). Loss caused by "[t]heft or larceny" and "[m]alicious mischief or vandalism" falls into the "other than 'collision'" category. (*Id.*). The Policy, however, does not define theft, larceny, mischief, or vandalism. Whereas here the terms are undefined, the Court must discern their meaning.

Each of these undefined terms are criminal offenses, and the Court must discern their meaning with a criminal law analysis. *Lowry v. State Farm Ins.*, 572 A.2d 700, 703 (Pa. Super. 1990). When applying a criminal law analysis to resolve what an undefined term of an insurance policy means, Pennsylvania courts must apply "the criminal law which was effective when the subject insurance contract was entered into, rather than common-law definitions." *Id.* The Pennsylvania Crimes Code has been effective since 1973. 18 PA. CONS. STAT. § 3902. During that time frame, the definitions have stayed the same. *Id.* Therefore, the current version of the Pennsylvania Crimes Code controls the Policy.

### 2. THE INSURANCE TERMS AT ISSUE

To determine whether Nationwide breached the Policy, the Court must determine whether a theft by unlawful taking or criminal mischief occurred. Plaintiffs rely on circumstantial evidence to support their positions. Under Pennsylvania law, parties may establish their case purely through circumstantial evidence surrounding an incident. *Commonwealth v. Wilamowski*, 633 A.2d 141 (Pa. 1993); *see also Commonwealth v. Boyer*, 282 A.3d 1161, 1171 (Pa. Super. 2022).

#### a. THEFT

The parties' dispute centers on the issue of intent. (ECF No. 43, p. 2). "A person acts intentionally with respect to a material element of an offense when[,] ... if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result." 18 PA. CONS. STAT. § 302(b)(1). A person's intent may be "inferred from the nature of the act." *Minn. Fire & Cas. Co. v. Greenfield*, 805 A.2d 622, 625 (Pa. Super. 2002).

Under the Pennsylvania Crimes Code, the offenses of theft and larceny are consolidated into the crime of theft. 18 PA. CONS. STAT. § 3902. The only applicable means of committing theft under the Pennsylvania Crimes Code related to the facts of this case is theft by unlawful taking. *Id.* "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." *Id.* § 3921(a).

Plaintiffs advance two theories as to intent to oppose summary judgment. Under their VanMar employee theory, Plaintiffs claim that only VanMar had authorization to remove the Vehicle's parts for repair and the missing parts have still not been found in VanMar's Facility. (ECF No. 42, p. 3). Under their outside individual theory, Plaintiffs contend Eckhardt left the Vehicle unattended in its outside, unsecured parking lot without ever inspecting or checking on the Vehicle. (*Id.* at pp. 3, 5). Nationwide refutes both theories. Nationwide claims that "missing parts do not equate to theft or vandalism."[1] (ECF No. 37, p. 1). Nationwide argues there is no evidence that "anyone acted with specific intent to steal." (*Id.* at p. 9).

---

[1] Nationwide cites the unpublished opinion of *Rogers v. Allstate Property & Cas. Ins.*, No. 161 EDA 2015, 2015 WL 9320139 (Pa. Super. Dec. 22, 2015) as instructive. (ECF No. 37, p. 9). According to Nationwide, *Rogers* stands for the proposition that faulty workmanship does not amount to theft if there is no intent to steal. *Id.* At bottom, Nationwide's attempt to analogize the facts of *Rogers* to those of this case falls flat. Nationwide simply conflates poor workmanship with the offense of unlawful taking.

7

Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Plaintiffs sustained a loss under the Policy as a result of theft. Two genuine issues of material fact exist as to whether there is intent for a theft. The first genuine issue of material fact is that the parties dispute who, or what, committed the act of taking the Vehicle's missing parts. Neither of the parties know how the parts went missing, let alone who may have taken them. (ECF No. 38-2, pp. 31-32); (ECF No. 38-6, p. 11); (ECF No. 38-7, p. 19). Unsurprisingly, none of the depositions supporting their positions identify the alleged thief of the missing parts.

Whether the Helper—or even Eckhardt—was the actor who stole the missing parts remains unclear from the testimonies of Lawlor, Clark, and Eckhardt. Lawlor and Clark both testified that when retrieving the Vehicle, Eckhardt told them that he had to fire the Helper who was stealing automobile parts.[2] (ECF No. 38-2, p. 29); (ECF No. 38-5, pp. 6-7). Clark also testified that Eckhardt's comments implied the Helper's firing related to the Vehicle's missing parts. (ECF No. 38-5, p. 7). Nevertheless, Eckhardt testified that he never told Lawlor or Clark he fired the Helper for theft. (ECF No. 38-4, p. 17). While Eckhardt admitted that the Helper worked on the Vehicle and that he in fact fired the Helper, Eckhardt testified that the firing related to job performance. (*Id.* at pp. 4, 17). He also testified that nothing had ever been stolen from VanMar. (ECF No. 44-4, p. 2). There is unquestionably a genuine issue of material fact as to the circumstances of the Helper's termination and whether it relates to theft. If it does relate to theft, a reasonable jury

---

[2] Nationwide contends this alleged statement from Eckhardt is hearsay and therefore inadmissible. (ECF No. 43, p. 2). As the United States Court of Appeals for the Third Circuit has held, however, "hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (citations omitted). The Court finds this statement is feasibly admissible at trial under several hearsay exceptions.

could find that it supports a claim under the policy. A jury will have to decide this question of fact.

Additionally, whether an outside individual was the actor who stole the missing parts remains unclear from the testimonies of Lawlor and Eckhardt. Eckhardt testified that no one stole or improperly removed parts from the Vehicle. (ECF No. 38-4, pp. 25-26). Furthermore, he testified that all the parts he removed from the Vehicle were returned to Plaintiffs when they picked up the Vehicle. (*Id.* at 15). Conversely, Lawlor testified that the Vehicle had all its parts when Plaintiffs dropped it off at VanMar and that parts were missing when they picked it up. (ECF No. 38-2, pp. 32, 36). Lawlor admitted he has no idea who may have stolen parts from the Vehicle. (*Id.* at pp. 31-32). Again, there is enough circumstantial evidence that would permit a reasonable jury to determine that an outside individual took the parts.

On top of the unknown identity of the actor, the second genuine issue of material fact is whether the unknown actor *intended* to take the Vehicle's missing parts. Whether the Helper—or even Eckhardt—intended to steal the missing parts at issue remains unclear from the testimonies of Lawlor and Eckhardt. Lawlor testified that when he and Clark went to retrieve the Vehicle from VanMar, they found it "out the back of the shop" with its hood propped open, driver's door ajar, and parts on the ground. (ECF No. 38-2, pp. 26-27). Clark, however, testified that the Vehicle's hood and doors were closed. (ECF No. 38-5, pp. 3-4). As for Eckhardt, he admitted that VanMar left the engine hanging by a ratchet strap and a two-by-four but also represented that no parts were stolen from the Vehicle while VanMar possessed it. (ECF No. 38-4, pp. 10, 25-26).

Outside of the testimonies that Eckhardt conveyed he fired his Helper for stealing, Lawlor testified that he, Eckhardt, and Clark did a careful walk-through of the shop after they trailered the Vehicle to ensure that no other parts were missing. (ECF No. 38-2, p. 36). Lawlor added that,

afterward, Eckhardt confirmed that he had no other parts from the Vehicle. (*Id.*). While Eckhardt admits the transmission work he performed required the removal of several engine components, he avers that he placed all the parts he removed in the trunk of the Vehicle and that parts were not accidently discarded while VanMar worked on the Vehicle. (ECF No. 38-4, pp. 12-14, 21-22). Throughout his testimony, Eckhardt contradicts Lawlor with his insistence that VanMar returned all the Vehicle's parts when Lawlor retrieved the Vehicle and that no one stole or improperly removed parts from the Vehicle while it was in the possession of VanMar. (ECF No. 38-4, pp. 13, 15, 25-26); (ECF No. 44-4, p. 2).

In all, a jury must sort through the conflicting accounts of Lawlor, Clark, and Eckhardt, weigh Plaintiffs' circumstantial evidence, and determine whether a VanMar employee or an outside individual stole the missing parts. The Court cannot make any credibility determinations or weigh the evidence in one party's favor or another. *Anderson*, 477 U.S. at 255. There is sufficient evidence to submit to a jury as to whether a theft occurred as defined in the Policy.

### b. Vandalism ("Criminal Mischief")

Under Pennsylvania law, the concepts of vandalism and malicious mischief are encompassed by the statutory crime of criminal mischief. 18 PA. CONS. STAT. § 3304; *Capital Flip, LLC v. Am. Modern Select Ins.*, 416 F. Supp. 3d 435, 439 (W.D. Pa. 2019). The only means of committing criminal mischief under the Pennsylvania Crimes Code related to the facts of this case is Section (a)(5). 18 PA. CONS. STAT. § 3304(a)(5). Section (a)(5) provides that criminal mischief is committed if a person "intentionally damages real or personal property of another." *Id.*

Plaintiffs advance two theories in opposition to summary judgment. For their transmission theory, Plaintiffs assert that VanMar may have damaged the Vehicle with the hope that Plaintiffs would incur a more expensive repair. (ECF No. 42, p. 5). Plaintiffs question how VanMar's initial

inspection, with the dye and camera test, on the Vehicle failed to diagnose the purportedly large hole. (*Id.*). For their engine theory regarding VanMar's unattended, outside storage of the Vehicle, Plaintiffs contend that an individual other than a VanMar employee likely damaged or removed the wood beam and strap supporting the Vehicle's engine as a "destructive joke." (*Id.*). They proffer that when Lawlor went to retrieve the Vehicle from VanMar's outside premises, no straps or supports were there. (*Id.*). As with theft, Nationwide refutes both of Plaintiffs' theories. (ECF No. 37, pp. 11-12). Nationwide argues that "it is impossible to analyze this unknown actor's intent" because Plaintiffs cannot identify the actor who allegedly vandalized the Vehicle. (*Id.* at p. 12 n. 3).

Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could also find that Plaintiffs sustained a loss for vandalism under the Policy as a result of criminal mischief. Similar to theft, the same two genuine issues of material fact exist for vandalism—the identity of the actor who committed the criminal mischief and their intention to commit such an act.

The testimonies of Lawlor and Eckhardt counterbalance each other. For the transmission theory, Lawlor testified about his conversations with Eckhardt. He explained that Eckhardt told him that VanMar initially used a dye and camera test to diagnose the unknown leak in the Vehicle's transmission and called him two weeks later to inform him they found a purported large hole. (ECF No. 38, ¶¶ 11-12); (ECF No. 40, ¶¶ 11-12). While Lawlor questions how VanMar did not find the hole during the initial test, he admits he has no idea if Eckhardt or another VanMar employee caused the hole. (ECF No. 38-2, p. 10). Eckhardt's testimony, however, contradicts Lawlor's testimony. Eckhardt claims the hole formed after one of the teeth on the clutch's pressure plate broke and wore into the transmission's aluminum case. (ECF No. 38-4, p. 6).

11

For the engine theory, Eckhardt testified that VanMar left the engine hanging by a ratchet strap and a two-by-four and stated that none of the Vehicle's parts were vandalized while VanMar had it parked outside. (ECF No. 38-4, pp. 10, 25-26). Lawlor's and Clark's testimonies reflect their differing accounts of whether they found the Vehicle with its hood and doors open. (ECF No. 38-2, p. 26); (ECF No. 38-4, p. 4). Yet, Clark's testimony does not contradict Lawlor's testimony that the two-by-four was not in place when they approached the Vehicle, contrary to the state in which Eckhardt testified he left the Vehicle. (ECF No. 38-4, pp. 10-12); (ECF No. 38-5, pp. 3-4); (ECF No. 44-5, p. 5).

As with theft, the Court cannot make any credibility determinations or weigh the evidence in one party's favor or another. *Anderson*, 477 U.S. at 255. A jury must weigh each witness's testimony to determine who is responsible for damage to the Vehicle's parts. After viewing the evidence in the light most favorable to the nonmoving party, the Court finds a reasonable jury could find that Plaintiffs sustained a loss under the Policy as a result of vandalism.

For the foregoing reasons, the Court denies Nationwide's Motion as to Count I. A jury must resolve the genuine issues of material fact as to intent to determine whether the Vehicle's missing and damaged parts constitute a loss under the Policy.

B.   **Statutory Bad Faith – Count II**

In addition to its coverage claim, Plaintiff brought a bad faith action under Pennsylvania's bad faith statute. 18 PA. CONS. STAT. § 8371. The statute does not define the term "bad faith." *Id.* Pennsylvania courts, therefore, look to case law or rules of statutory construction to ascertain the meaning of "bad faith." *Romano v. Nationwide Mut. Fire Ins.*, 646 A.2d 1228, 1232 (Pa. Super. 1994). To prevail upon a claim of bad faith under Pennsylvania law, Plaintiffs, by clear and convincing evidence, must demonstrate "two elements: (1) that the insurer had no reasonable basis

for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Berg v. Nationwide Mut. Ins.*, 235 A.3d 1223 (Pa. 2020) (citing *Rancosky v. Wash. Nat'l Ins.*, 170 A.3d 364, 377 (Pa. 2017) (holding that "proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim") (internal quotation marks omitted)). The clear and convincing evidence standard entails "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Sylvester*, 555 A.2d 1202, 1203-04 (Pa. 1989) (citation omitted).

The Pennsylvania Supreme Court has described bad faith conduct as the lack of investigation into the facts surrounding a loss. *Romano*, 646 A.2d at 1232. Bad faith actions may also encompass an insurer's investigative practices. *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142 (Pa. Super. 2006) (citing *O'Donnell v. Allstate Ins.*, 734 A.2d 901, 906 (Pa. Super. 1999)). While mere negligence or bad judgment is not bad faith, insurers must conduct "meaningful investigation[s]." *Rancosky*, 130 A.3d at 97 (citing *Mineo v. Geico*, No. 12-1547, 2014 WL 3450820, at *6 (W.D. Pa. July 15, 2014)). This type of conduct includes, in relevant part, "an in-person interview [or] examination under oath." *Baum v. Metro. Prop. & Cas. Ins.*, No. 2:16-CV-623, 2019 WL 4689024, at *5 (W.D. Pa. Sept. 26, 2019).

Nationwide argues that Plaintiffs have not established by "clear and convincing evidence" that it lacked a reasonable basis in denying Plaintiffs' claim for benefits under the Policy. (ECF No. 37, p. 14). Nationwide contends there is "no evidence that a theft or vandalism occurred." (*Id.*). Building off that argument, Nationwide avers it acted reasonably in denying Plaintiffs' claim

after it confirmed with the police and Eckhardt that neither of them found—or was aware of—any evidence that a theft occurred. (*Id.*).

Plaintiffs completely disagree with Nationwide, asserting that deficiencies exist with Nationwide's investigation. (ECF No. 42, p. 6). Plaintiffs claim Nationwide's decision to not take statements from Persichini and Clark on the grounds of bias was "absurd." (*Id.*). They also note that Nationwide never had a representative inspect the Vehicle to determine if the missing parts were related to VanMar's transmission-related repairs. (*Id.*).

*Condio* instructs the Court on what insurers may rely on at a minimum for their conduct to constitute a good-faith investigation. *Condio*, 899 A.2d at 1152, 54. In *Condio*, the estate of a motor vehicle occupant who was killed in a car accident sued an insurer for bad faith in handling the estate's underinsured motorist claim. *Id.* at 1139-41. Although the estate claimed the insurer failed to conduct an independent investigation, the Superior Court of Pennsylvania held that an insurer's review of the police report and its counsels' work product amounted to a good faith investigation of the facts. *Id.* at 1154-55. The counsels' work product included efforts to secure testimony for an arbitration hearing, timely and appropriate correspondence with the insured and insured's counsel, and exercise of the exhaustion of coverage provision. *Id.* at 1153-54. The Superior Court added that the insurer would have performed a good faith investigation even if the insurer relied on the police report alone, reasoning that duplicative investigations are unnecessary. *Id.* at 1152, 54. According to *Condio*, an insurer's reliance on a police report amounts to a good-faith investigation.

In this case, Nationwide failed to rely on a police report or anything close to it. (ECF No. 38-7, p. 12). The *Condio* court described the police report as a "very lengthy" document containing consistent statements by those involved and reports from police officers at the accident scene.

*Condio*, 899 A.2d at 1151. Unlike the police report that justified the insurer's reasonable basis in *Condio*, Nationwide relied on an unrecorded phone call with the officer whose entire investigation consisted of two mere phone calls with Lawlor and Eckhardt. (ECF No. 38-7, pp. 2-3). Additionally, the officer did not give a sworn interview to Nationwide as he did not consent to being recorded. (*Id.* at 2). In fact, none of the interviews Nationwide conducted were under oath, in person, or by anyone who inspected the Vehicle. (ECF No. 38, ¶ 40).

Further, *Rancosky* shows what level of conduct does not arise to a meaningful investigation. The Pennsylvania Superior Court held in *Rancosky* that a health insurer did not act in good faith after denying the insured's claim for benefits following her cancer diagnosis. *Rancosky*, 130 A.3d at 83-90, 104. Specifically, the *Rancosky* court determined that the insurer failed to conduct a meaningful investigation into when the insured's cancer stopped her from being able to perform her job duties. *Id.* at 96-98. Despite having received conflicting information, the *Rancosky* court determined that the insurer denied the claim without having taken any steps to contact the insured's employer to resolve the conflict. *Id.* The court found the insurer failed to determine the insured's duties at the time of her diagnosis or obtain the necessary information to make an accurate determination as to the starting date of the insured's disability. *Id.*

Analogous to *Rancosky*, Nationwide received conflicting information from Lawlor and Eckhardt regarding whether theft or vandalism occurred at VanMar, and never took any steps to obtain critical information that may have resolved discrepancies with Plaintiffs' claim. (ECF No. 38-7, pp. 12, 17, 19-23). Nationwide did not retain anyone to inspect the Vehicle. (ECF No. 41-2, p. 1). It did not reach out to Plaintiffs' mechanic, who examined the Vehicle after Lawlor and Clark retrieved it from VanMar. (*Id.*).

In light of *Condio* and *Rancosky*, the Court finds that Nationwide's investigation was not reasonable. Nationwide's investigation insufficiently delved into the facts of Plaintiffs' claim, and the totality of its fact-finding efforts did not arise to the level of a meaningful investigation. For this reason, the Court denies the Motion as to Count II. Consequently, the Court need not reach the second bad-faith prong, i.e., whether the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim. *See Berg*, 235 A.3d at 1223.

### V. CONCLUSION

For these reasons, Nationwide's Motion will be denied. An order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

12-7-23
Dated